Jack R. Nelson (State Bar No. 111863)
Marshall C. Wallace (State Bar No. 127103)
Karen A. Braje (State Bar No. 193900)
REED SMITH LLP
1999 Harrison Street
Oakland, CA  94612-3572
**Mailing Address:**
P.O. Box 2084
Oakland, CA  94604-2084
Telephone:    510.763.2000
Facsimile:    510.273.8832

WINSTON & STRAWN LLP
Thomas J. Wiegand (Admitted *Pro Hac Vice*)
35 W. Wacker Drive
Chicago, IL  60601-9703
Telephone:    312.558.5600
Facsimile:    312.558.5700

WINSTON & STRAWN LLP
Michael K. Maly (State Bar No. 66693)
Gail S. Greenwood (State Bar No. #169939)
101 California Street
San Francisco, CA 94111-5894
Telephone:    415.591.1000
Facsimile:    415.591.1400

Attorneys for Defendant
American General Financial Services, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SUSAN O. SWANSON, suing individually and on behalf of all others similarly situated and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN INTERNATIONAL GROUP, INC., et al.,<br><br>Defendants. | No. C 04-03962 JSW<br><br>**DEFENDANT AMERICAN GENERAL FINANCIAL SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO REMAND**<br><br>Date:         January 21, 2005<br>Time:         9:00 a.m.<br>Place:        Courtroom 2<br><br>Honorable Jeffrey S. White |

No. C 04-03962 JSW

DOCSSFO-12388136.1- KBRAJE

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion To Remand

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

**TABLE OF CONTENTS**

**Page**

I     INTRODUCTION AND SUMMARY OF OPPOSITION.................................................. 1

II    FACTS ................................................................................................................................ 2

     A.    Swanson's Complaint Purports To State Unfair Lending Claims ......................... 2

     B.    Swanson Seeks Sweeping Remedies Based Upon Her Allegations ....................... 3

     C.    Swanson's Complaint Names Defendants With Whom She Had No Relationship ......................................................................................................... 4

     D.    The Overlapping *Morgan v. American International Group, Inc.* Case ................. 5

III   LEGAL ANALYSIS ......................................................................................................... 5

     A.    All Of The Properly Named Defendants Are Diverse From Each Of The Plaintiffs ........................................................................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

# TABLES OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Kentucky Finance, et al.,*
U.S.D.C. Action No. 4:02CV38LN ............................................................ 12

*Arco Environmental Remediation, L.L.C. v. Department of Health and Environmental
Quality,*
213 F.3d 1108 (9th Cir. 2000) ........................................................ 12, 13

*Baker, et. al. v. Washington Mutual Finance Group f/k/a City Finance Company,*
Case No. 98-0026 ............................................................................ 10

*Baymiller v. Guarantee Mutual Life Co.,*
2002 WL 1072234 (C.D. Cal. 2002) ........................................................ 8

*Bell v. Preferred Life,*
320 U.S. 238 (1943) ........................................................................ 11

*Civil Service Employees Co. v.  Super. Ct.,*
22 Cal. 3d 362 (1978) ...................................................................... 13

*Conrad Associates v. Hartford Acc. & Indemnity Co.,*
994 F. Supp. 1196 (N.D. Cal. 1998) ........................................................ 9

*In re Ford Motor Co./Citibank,*
264 F.3d 952 (9th Cir. 2001) ........................................................... 8, 11

*Franchise Tax Board of California v. Construction Laborers Vacation Trust,*
463 U.S. 1 (1983) .......................................................................... 12

*G/S v. JSS Scandinavia,*
142 F.3d 1150 (9th Cir. 1998) ............................................................. 11

*Henley v. Pioneer Credit Co.,*
2002 WL 1013110, at  4 (N.D. Miss 2002) ................................................. 11

*Hunter v. United Van Lines,*
746 F.2d 635 (9th Cir. 1985) .............................................................. 13

*Kraus v. Trinity Management Services, Inc.,*
23 Cal. 4th 116 (2000) .................................................................... 12

*Kruso v. International Telegraph and Telegraph Co.,*
872 F.2d 1415 (9th Cir. 1989) .............................................................. 6

*Lippitt v. Raymond James Finance Services,*
340 F.3d 1033 (9th Cir. 2003) ............................................................. 13

*McCabe v. General Foods Corp.,*
811 F.2d 1336 (9th Cir. 1987) .............................................................. 5

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion
To Remand

REED SMITH LLP

A limited liability partnership formed in the State of Delaware.

*Morris v. Princess Cruises, Inc.,*
  236 F.3d 1061 (9th Cir. 2001).................................................................................. 5

*Myers v. Merrill Lynch,*
  1999 U.S. Dist. LEXIS 22642 (N.D. Cal. 1999)..................................................... 14

*Precision Pay Phones v. Qwest Communs. Corp., ,*
  210 F. Supp. 2d 1106 (N.D. Cal. 2002) ................................................................. 12

*Rankin v. American General Finance, Inc., Supreme Court of Mississippi,*
  Case No. 2003-CA-02615 ........................................................................................ 15

*Richmond v. Allstate Insurance Co.,*
  897 F. Supp. 447 (S.D. Cal. 1995) ............................................................................ 9

*Simmons v. PCR Technology,*
  209 F. Supp. 2d 1029 (N.D. Cal. 2002) ................................................................. 8, 9

*Singer v. State Farm Mutual Automobile Insurance Co.,*
  116 F.3d 373 (9th Cir. 1997)...................................................................................... 8

*Stewart v. Gulf Guaranty Life Insurance Co.,*
  846 So. 2d 192 (Miss. 2002) .................................................................................... 11

*TPS Utilicom Services, Inc. v. AT&T Corp.,*
  223 F. Supp. 2d 1089 (9th Cir. 2002) .................................................................... 6, 7

*Taylor v. Wells Fargo Home Mortgage, Inc.,*
  2004 U.S. Dist. LEXIS 6910 (E.D. La. April 20, 2004) ......................................... 14

*Vournas v. Fidelity National Title Insurance Co.,*
  73 Cal. App. 4th 668 (1999)....................................................................................... 6

## STATUTES

12 U.S.C. § 2601, *et seq*.......................................................................................... 13

12 U.S.C. § 2604 ...................................................................................................... 13

12 U.S.C. § 2605 ...................................................................................................... 13

15 U.S.C. § 1601, *et seq*.......................................................................................... 13

15 U.S.C. § 1632 ...................................................................................................... 13

15 U.S.C. § 1635 ...................................................................................................... 13

15 U.S.C. §§ 1637-1639 ........................................................................................... 13

15 U.S.C. §§ 1662-1664 ........................................................................................... 13

28 U.S.C. § 1332 ...................................................................................................... 12

Cal. Bus. & Prof. Code § 17200 ...................................................................... 3, 13, 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion
To Remand

1   Cal. Civ. Code § 1750 *et seq.* ................................................................ 2, 13

2   Cal. Civil Code § 1770 ........................................................................ 13

3   Cal. Civ. Code § 1770(a) ....................................................................... 2

4

**MISCELLANEOUS**

5   Greenwald & Asimow, *Cal. Practice Guide:*
       *Real Property Transactions*, 41 6:372 ....................................................... 6

6

*Cal. Practice Guide: Fed. Civ. Pro. Before Trial* §§ 2:440-448 ............................... 11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion To Remand

1

**I**

2

**INTRODUCTION AND SUMMARY OF OPPOSITION**

3      Plaintiff Susan O. Swanson ("Swanson") brings this class action, ostensibly on

4   behalf of the general public and others similarly situated, against American General Financial

5   Services, Inc. ("AGFS") and a handful of related companies.  The gravaman of Swanson's

6   complaint is that AGFS engaged in alleged predatory lending practices in connection with

7   consumer loans and insurance services.  In an apparent effort to avoid removal, Swanson also

8   names two non-existent entities – "American General Finance" and "American General Financial

9   Services" – and designates them as California corporations.  Swanson seeks unlimited

10  compensatory and punitive damages, in addition to restitution, disgorgement, and attorneys' fees

11  in connection with four loans, where the final loan exceeded $117,000.

12      Removal to federal court is appropriate because there is complete diversity of

13  citizenship between Swanson and the viable defendants, and the amount in controversy exceeds

14  $75,000 as demonstrated by the pleadings.  First, complete diversity exists once the Court

15  disregards the two sham defendants - "American General Finance" and "American General

16  Financial Services" – neither of which have ever existed.  Further, no misconduct even is alleged

17  as to either of these non-entities.  Second, the amount in controversy requirement is met as to

18  Swanson alone because Swanson's allegations of "equity stripping," and specifically her claim

19  for restitution, put the entire $117,000 value of Swanson's loan amount at issue.  In addition to

20  restitution, Swanson seeks disgorgement, emotional distress damages, punitive damages and

21  attorneys' fees, all of which bring the amount in controversy to well over $75,000.

22      Alternatively, removal is appropriate because Swanson's right to relief depends

23  upon the resolution of substantial, disputed federal questions.  This Court may look beyond the

24  pleadings and recharacterize Swanson's claims as federal in nature.  Swanson's purported state

25  law claims, in essence, complain about certain disclosures and non-disclosures in the context of

26  loan transactions and, therefore, require interpretation and application of federal laws such as the

27  Truth in Lending Act ("TILA") and the Real Estate Settlement Practices Act ("RESPA").

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

## II

## FACTS

**A.      Swanson's Complaint Purports To State Unfair Lending Claims**

Having borrowed funds from AGFS, and having enjoyed the benefit of those funds, Swanson now launches a scatter-shot attack on AGFS' lending practices, accusing AGFS of a "Predatory Lending Scheme." (Complaint ("Compl."), at 5:10). Among other things, Swanson asserts that AGFS did all of the following things to her and, apparently, other "similarly situated" borrowers, when it lent them money:

- Used "sales pitches" including misrepresentations to lure and mislead unsophisticated borrowers into credit transactions (Compl., ¶ 19);

- Failed to disclose "hidden costs and risks," and rushed prospective borrowers through the loan closing process (*Id.*, ¶ 20);

- Subjected borrowers to "equity stripping" (apparently, reducing equity in borrowers' homes) by "flipping loans" (i.e., refinancing existing loans as part of lending additional funds requested by borrowers) and charging further points and fees on the new loans (*Id.*, ¶ 21);

- Enrolled borrowers without their consent in supposedly overpriced credit insurance products on which AGFS purportedly earned undisclosed commissions (*Id.*, ¶¶ 24-26);

- Included prepayment fees without alerting borrowers (*Id.*, ¶ 28); and

- Entered arbitration agreements (*Id.*, ¶ 29).

All of these claims arise out of the fact that AGFS provided to Swanson the credit that Swanson affirmatively sought and accepted.

Though federal statutes and regulations govern consumer lending to an extraordinary degree – for example, through the Truth In Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA), as well as myriad regulations under these Acts – Swanson avoided mention of her implicit reliance on these federal laws by suing AGFS on three non-specific, erroneous or derivative state law theories. First, Swanson tries to fit the square peg of these loan transactions into the round hole of a claim under the California Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) (CLRA), which regulates "transaction[s] intended to result or which result[] in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Second, Swanson alleges the seemingly obligatory California Business &

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1  Professions Code Section 17200 cause of action.  Recognizing that her Section 17200 claim must

2  be tethered to a specific statute or regulation, Swanson says that the CLRA violation provides the

3  predicate for her Section 17200 claim, ignoring the inapplicability of the statute to this situation.

4  (Compl., ¶ 73).  Finally, Swanson purports to assert a state law claim for "concealment" that in

5  truth is little more than an attempt to restate in common law terms allegations of violations of

6  TILA or RESPA disclosure requirements.

7  **B.  Swanson Seeks Sweeping Remedies Based Upon Her Allegations**

8  Swanson seeks sweeping remedies for her alleged injuries.  First and foremost,

9  Swanson alleges that AGFS engaged in what she terms "equity stripping" and seeks economic

10  damages including "loss of equity… all in an amount to be proven a trial." (Compl., ¶¶ 4 and 81).

11  Specifically, Swanson alleges she inherited a home that had been "free and clear" of

12  encumbrances at the beginning of 2003, prior to entering any loans with AGFS.  (Compl., ¶30).

13  The Complaint continues, "the original mortgage had been fully paid off," such that any existing

14  mortgage is the result of loans that Swanson obtained through AGFS and that eventually were

15  refinanced.  (Compl., ¶31 and 54).  Swanson obtained four loans with AGFS beginning with an

16  unsecured loan for $2,146.53 in February 2003, and ending with a $117,309 trust deed loan in

17  July 2003, encumbering the home that she had owned "free and clear" at the beginning of 2003.

18  (Compl., ¶30).  Thus, Swanson blames AGFS for having lost equity, and the amount at issue is at

19  least $117,000.

20  In addition to the damages stemming from her alleged loss of equity, Swanson

21  seeks an unlimited amount of damages, including restitution, disgorgement of at least $27,000

22  (Mtn. For Remand, p. 9), emotional distress damages (Compl., ¶ 81), punitive damages (Prayer, ¶

23  2), and attorneys' fees (Compl., ¶¶ 68 and 76), all in amounts to be proven at trial.  All in all, the

24  pleadings themselves demonstrate that Swanson seeks compensatory damages of at least her

25  supposed lost equity of $117,000 plus disgorgement of over $27,000, for a total more than

26  $144,000.

27

28

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion To Remand

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

**C.    Swanson's Complaint Names Defendants With Whom She Had No Relationship**

As plaintiffs do so often these days, Swanson seeks greater leverage by attempting to bring these claims as a "representative action" on behalf of the "general public" as well as a class action. She does so despite her express agreement to arbitrate any disputes with AGFS, and not to pursue class or representative actions. (*See* Compl., ¶ 29).

Seeking to increase that leverage, Swanson has named as defendants multiple additional entities, with none of which she had, nor even alleges, a contract or relationship. Swanson has thus sued AGFS' parent company, American General Finance Corporation ("AGFC"), and the parent of that entity, American General Finance, Inc. ("AGFI").[1] Swanson also named as a defendant the ultimate parent holding company, American International Group, Inc. ("AIG"). None is a citizen of California for diversity purposes, and Swanson does not argue otherwise.

AGFS is a Delaware corporation with its principal place of business in Indiana. Swanson does not contest these facts. Instead, in a transparent bid to destroy diversity, Swanson has named as Defendants "American General Finance, a California Corporation" and "American General Financial Services, a California Corporation" (the Trustee Defendants). She alleges that these companies are "identified as the trustee on certain deeds of trust prepared by Defendants . . ." (Compl., ¶¶ 12-13). Swanson also includes boilerplate allegations, unsupported by any facts that (1) each of the defendants is the agent of each of the other defendants; and (2) each of the defendants aided and abetted each of the other defendants in doing the matters alleged. (Compl., ¶¶ 17-18). The Complaint sets forth no other allegations regarding the Trustee Defendants.

In addition, as made clear in AGFS's Notice of Removal, at no relevant time has there been a California corporation named American General Finance or American General Financial Services. Rather, the trustee under Swanson's deeds of trust – and, to AGFS's knowledge, all deeds of trust used for California loans – is A.G. Documentation Services, Inc.

---

[1]  Plaintiff recently has stipulated to the dismissal of AGFC and AGFI from this case.

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion To Remand

1   (AGDS), which is a California corporation.  Declaration of John Arch Ebright ("Ebright Decl."),

2   ¶ 2.  The deeds of trust produced by Swanson inadvertently refer to these other names despite

3   AGDS being the trustee.  *See*, e.g., Exhibits A and B to Swanson Declaration.  As will be shown,

4   however, even if AGDS had been named as defendant, that would not have destroyed diversity

5   because any attempt to name the trustee as a defendant here is unsupportable under the facts

6   plead.  The trustee defendants are, and AGDS would be, sham defendants.  Thus, the only non-

7   diverse defendants do not even exist.

8           **D.**          **The Overlapping *Morgan v. American International Group, Inc.* Case**

9                   Swanson filed this Complaint about two weeks after a group of other law firms

10   filed *Morgan v. American International Group, Inc.*, in Alameda County Superior Court.

11   Defendants timely removed that case to this Court and it has been assigned to this same Judge as

12   Action No. C 04-03227 JSW.  At this point there is an informal agreement among the parties to

13   handle the matters together.  Many of the allegations in the two actions are essentially identical to

14   each other.  Plaintiffs in the *Morgan* action did not even attempt to sue any trustee defendant.

15                                          **III**

16                                 **LEGAL ANALYSIS**

17   **A.    All Of The Properly Named Defendants Are Diverse From Each Of The Plaintiffs**

18                   To determine whether there is complete diversity of citizenship, the Court should

19   not consider any defendant that has been "fraudulently joined" in the action.  *Morris v. Princess*

20   *Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *McCabe v. General Foods Corp.*, 811 F.2d

21   1336, 1339 (9th Cir. 1987).  To meet this standard, a defendant need not actually show fraud or

22   intent to mislead.  Rather, the test is as follows:  If a plaintiff fails to state a cause of action

23   against a resident defendant, and the failure is obvious according to the settled rules of the state,

24   the joinder of the resident defendant is deemed fraudulent and its citizenship is disregarded in

25   assessing diversity jurisdiction.  *Id.* at 1339; *Morris* at 1067.

26                   In determining whether a defendant has been fraudulently joined, the Court may

27   and should consider evidence presented by the defendant.  *McCabe* at 1339.  Mere conclusory

28   pleading by the plaintiff is not enough to show the existence of a cause of action against the non-

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion
To Remand

1   diverse defendant. *TPS Utilicom Services, Inc. v. AT&T Corp.*, 223 F.Supp.2d 1089, 1103-04

2   (9th Cir. 2002) at 1102. (Court should accept "non-conclusory factual allegations in the

3   Complaint as true"). Nor may the Court consider any argument by the plaintiff that future

4   discovery might reveal a factual basis for a claim against the local defendant [*Id.* at 1103], or that

5   the plaintiff could amend the complaint to state some cause of action. *Kruso v. International Tel.*

6   *and Tel. Co.*, 872 F.2d 1415, 1426 fn. 12 (9th Cir. 1989) (upholding refusal to consider proposed

7   amended complaint on motion to remand).

8            Applying these guidelines, courts routinely conclude there to be obviously no

9   cause of action against non-diverse defendants, uphold diversity jurisdiction, and deny motions to

10   remand. *See*, e.g., *McCabe* at 1339; *Morris* at 1067; *Kruso* at 1427; *TPS Utilicom* at 1103-04.

11            Swanson cannot defeat diversity jurisdiction by suing "American General Finance,

12   a California Corporation," or "American General Financial Services, a California Corporation"

13   for the simple reason that neither of these purported defendants exists. Ebright Decl., ¶ 2.

14            Even if Swanson had sued such an entity, she has alleged no facts at all supporting

15   any possible liability of any trustee or other entity, and there are no such facts. The entirety of

16   Swanson's allegations against the trustee defendants are: (1) The trustee defendants were

17   identified as the trustee on certain deeds of trust prepared by defendants; (2) Each defendant was

18   the agent of each other defendant; and (3) Each defendant aided and abetted each other

19   defendant. These allegations do not come close to stating a cause of action. First, Swanson's

20   Complaint and her evidence have set forth no facts on which the trustee under any of her Deeds

21   of Trust could be held liable in this action. California law narrowly circumscribes the role and

22   responsibility of a trustee under a deed of trust:

23

24       The trustee of a deed of trust is not a true trustee, and owes no
         fiduciary obligations; he merely acts as a common agent for the
         trustor and the beneficiary of the deed of trust. [Citation] His only
25       duties are: (1) upon default to undertake the steps necessary to
         foreclose the deed of trust; or (2) upon satisfaction of the secured
26       debt to reconvey the deed of trust. *Vournas v. Fidelity National*
         *Title Ins. Co.*, 73 Cal. App. 4th 668, 677 (1999); *Greenwald &*
27       *Asimow, Cal. Practice Guide: Real Property Transactions*, 41
         6:372, p. 6-68.3 (TRG 2004) (attached as Exhibit A).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

No. C 04-03962 JSW                  - 6 -                        DOCSSFO-12388136.1-KBRAJE

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion
To Remand

Swanson does not allege any default under any of her loans.  To the contrary, she has judicially admitted that each of her loans was refinanced, concluding with a full refinancing by another lender not involved in this action.  (Compl., ¶¶ 40, 45, 50, 54).  Nor does Swanson allege any failure to timely reconvey.  Swanson therefore has not come close to alleging, or giving the Court any evidence of, any breach of either of the trustee's narrow duties.

Rather, as Swanson's "predatory lending" Complaint admits, her entire action is targeted at the loan <u>origination</u> process and documents, not loan default, foreclosure or reconveyance.  The Complaint does not come close to suggesting that any trustee did, or failed to do, <u>anything</u> for which it could be liable.

Swanson half-heartedly contends that her agency and aiding and abetting allegations supply grounds for liability, but these generic allegations contain no factual statements and thus add nothing.  Such conclusory allegations should be disregarded.  *TPS Utilicom,* 223 F. Supp. at 1103.  Swanson in effect asks the Court to believe that in lending its funds, the lender (AGFS) was acting on behalf of the deed of trust trustee, without any supporting facts or the slightest suggestion how that could be so.  Similarly, Swanson implies the trustee could be guilty of "aiding and abetting" the lender without doing <u>anything</u> other than being named on the deed of trust.  Swanson had the opportunity on this motion to provide the Court with evidence suggesting how a trustee under a deed of trust could be liable for the loan origination acts of the lender or, alternatively, some evidence that any foreclosure trustee was the principal for whom AGFS acted.  Swanson has provided the Court nothing.  That, of course, is because there is no evidence at all to support these boilerplate allegations.  If such commonplace, conclusory allegations of mutual agency and mutual aiding and abetting were sufficient to overcome the fraudulent joinder rule, then the doctrine would be avoidable in every case, and simply would cease to exist.

In short, Swanson fails to state any cause of action against any trustee, and that failure is obvious.  The Court should treat any such defendants as fraudulently joined, and disregard them in determining diversity.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

DOCSSFO-12388136.1-KBRAJE

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion To Remand

**B.**     **This Court Has Jurisdiction Because The Amount In Controversy Exceeds $75,000**

To determine whether the amount in controversy is satisfied for purposes of diversity jurisdiction, the court must first look to whether it is "facially apparent" from the allegations in the complaint. *Singer v. State Farm Mutual Auto. Ins. Co.,* 116 F. 3d 373, 377 (9th Cir. 1997). If the complaint does not clearly specify damages, the court may consider "summary judgment-type evidence" relevant to the amount in controversy at the time of removal. *Id.; see also Simmons v. PCR Technology,* 209 F.Supp. 2d 1029, 1031 (N.D. Cal. 2002). The jurisdictional minimum is satisfied by all manner of claims sought by each plaintiff, including equitable relief, punitive damages, and attorneys fees. *Id.* AGFS is only required to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. *In re Ford Motor Co./Citibank,* 264 F. 3d 952, 957 (9th Cir. 2001). Here, the evidence unequivocally demonstrates that AGFS has met its burden regarding the jurisdictional minimum.

**1.**     **Over $117,000 Is At Stake Based on Swanson's Claim For Loss of Equity That Appears On The Face of the Complaint**

Contrary to Swanson's argument in seeking remand, the face amount of her loan(s) is absolutely relevant to the amount in controversy. A claim for restitution places the face amount of the loan in controversy. *See e.g., Baymiller v. Guarantee Mutual Life Co.*, 2002 WL 1072234 (C.D. Cal. 2002)(face value of insurance policy determines the amount in controversy in connection with claims for misrepresentation of premiums; remand denied). On the face of her Complaint, Swanson alleges that AGFS subjects its borrowers to a practice referred to as "equity stripping." (Compl., ¶4). Swanson explains, "As borrowers find it increasingly difficult to make their loan payments, frequently succumbing to further flipping ["loan flipping"] to avoid default, they progressively lose equity in their homes instead of building equity, and their ability to keep their homes is rendered increasingly precarious." (*Id.*). At a minimum, equity stripping and claims for compensatory damages resulting from equity stripping necessarily bring the face amount of the loan into question. Swanson has expressly demanded economic damages that include "loss of equity… all in an amount to be proven a trial." (Compl., ¶81).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1    In this case, the Complaint specifically emphasizes Swanson's situation as one in

2    which she inherited a home that had been "free and clear" of encumbrances at the beginning of

3    2003, prior to entering any loans with AGFS. (Compl., ¶30). The Complaint continues, "the

4    original mortgage had been fully paid off," such that any existing mortgage is the result of loans

5    that Swanson obtained through AGFS that were eventually refinanced. (Compl., ¶31 and 54).

6    "Starting with an unsecured loan for $2,146.53 that she took out in February 2003, she ended with

7    a $117,309 trust deed loan which she entered in July 2003, encumbering the home that had been

8    free and clear of such encumbrances at the beginning of 2003." (Compl., ¶30). Thus, to the extent

9    that Swanson seeks damages for alleged loss of equity, the amount in controversy is at least

10   $117,000. *See also* Declaration of Susan O. Swanson, ¶5 (documents in connection with fourth

11   loan, a 30-year $117,309 home loan mortgage).

12   Swanson cannot avoid the clear meaning of her claims for loss of equity in an

13   effort to now avoid the jurisdiction of this Court. To the extent that she asserts that AGFS is

14   responsible for the mortgage on her home, and her alleged loss of free and clear title, her lawsuit

15   seeks well over $75,000.

16   **2.    Analogous Cases Involving Finance and Insurance Companies**

17   **Demonstrate That Over $75,000 Is At Stake**

18   "To establish probable punitive damages, defendant may introduce evidence of

19   jury verdicts in cases involving analogous facts." *Simmons v. PCR Technology,* 209 F.Supp.2d

20   1029, 1032 (N.D. Cal. 2002); *see also, Conrad Assocs. v. Hartford Acc. & Indem. Co.,* 994 F.

21   Supp. 1196, 1201 (N.D. Cal. 1998) (party may introduce jury verdicts of cases involving

22   analogous facts to demonstrate potential damage recovery); *Richmond v. Allstate Ins. Co.,* 897 F.

23   Supp. 447, 451 (S.D. Cal. 1995) (remand denied based on offer of proof regarding verdicts in

24   similar cases). Here, not only does Swanson's Complaint seek unspecified actual and punitive

25   damages, as well as attorneys' fees, but in an almost identical case the same plaintiffs' counsel as

26   in *Morgan* achieved a trial verdict well in excess of the jurisdictional minimum for every one of

27   the plaintiffs in that case, even though the loan amounts in that case were much less than here.

28

American General Financial Services, Inc.'s Memorandum Of Points And Authorities In Opposition To Motion
To Remand

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1     Swanson argues that AGFS' detailed citation to Mississippi cases in its removal

2   petition fails to show that the cases are analogous "flipping and packing" cases.  In fact, the case

3   of *Baker, et. al. v. Washington Mutual Finance Group f/k/a City Finance Company,* Case No. 98-

4   0026 (Holmes County, Mississippi, Honorable Jannie Lewis presiding), is virtually identical.  Not

5   only is it a case of "flipping and packing" against a finance company, but the same counsel for the

6   plaintiffs (Langston Sweet & Freese, PLLC, currently known as Sweet & Freese PLLC) has now

7   filed the related case that is pending before this Court, *Morgan, et al., v. American International*

8   *Group*.  AGFS concurrently files a  Request for Judicial Notice, attaching the complaint,

9   judgment, and final order in the *Baker* case.  The case demonstrates that well over $75,000 is at

10   stake as a result of Swanson's claims concerning alleged unfair loan practices.

11     Similar to the Complaint in this action, the *Baker* complaint alleges insurance

12   "packing," "loan flipping," and "equity stripping."  *See* Request For Judicial Notice, Exh. A at ¶¶

13   52-56.  For example, the *Baker* complaint states, "Defendant engaged in insurance packing by

14   increasing Plaintiffs' debt by padding or packing the amount financed through the sale of

15   insurance products."  *Id.* at 52.  Plaintiff's Complaint similarly alleges insurance "packing" based

16   on a practice of inducing borrowers to purchase credit insurance products at inflated prices.

17   (Compl., ¶3).  The *Baker* complaint alleges "loan flipping" and consequent loss of equity, which

18   Swanson calls "equity stripping," where "a cycle of default and refinancing begins which leads

19   inexorably to a higher and higher debt and, ultimately, to the loss of the borrower's home."

20   Request For Judicial Notice, Exh. A at ¶56.  Similarly, Plaintiff's Complaint alleges, "As

21   borrowers find it increasingly difficult to make their loan payments, frequently succumbing to

22   further flipping to avoid default, they progressively lose equity in their homes instead of building

23   equity, and their ability to keep their homes is rendered increasingly precarious.  (Compl., ¶4).

24     Most importantly for purposes of this Court's removal analysis, the *Baker* case

25   resulted in a jury verdict of $3 million punitive damages per plaintiff in addition to compensatory

26   damages.  Request For Judicial Notice, Exh. B.  The actual economic damages suffered by the

27   plaintiffs in the *Baker* case (i.e., the finance and insurance charges) were minimal, and certainly

28   much less than those alleged by the Plaintiff.  *Cf.* Request for Judicial Notice, Exh. C

1   (compensatory damages modified to amounts of less than $500 in the absence of emotional

2   damages). Despite the fact that damages were reduced for six of the *Baker* plaintiffs who were

3   deemed to have not suffered emotional distress, the average judgment against the lender exceeded

4   $2 million per plaintiff. The verdict and judgment in the *Baker* case demonstrates that Swanson's

5   claims for unfair lending practices based on alleged loan "flipping and packing" easily exceed

6   $75,000.

7              Other federal courts have repeatedly found that similar boilerplate flipping and

8   packing complaints, seeking unspecified damages against consumer finance companies (including

9   Defendant in this case), satisfy on their face the amount in controversy requirement for federal

10  diversity jurisdiction. *See e.g., Todd v. American General Finance, Inc., et al.* Memorandum

11  Opinion and Order, at p. 5, filed Sept. 23, 2003, attached as Exh. D to Request for Judicial

12  Notice; *Henley v. Pioneer Credit Co.,* 2002 WL 1013110, at * 4 (N.D. Miss 2002); *see also*

13  *Stewart v. Gulf Guaranty Life Ins. Co.,* 846 So. 2d 192 (Miss. 2002) (affirming jury award of

14  $1,003,500 for bad faith in connection with credit disability insurance purchased with $711 loan).

15  These cases, including the jury verdict in the *Baker* action, are evidence that the amount in

16  controversy in this action exceeds $75,000.

17              **3.    Swanson's Claims, Including Punitive Damages and Attorneys' Fees,**

18                      **Easily Exceed the Jurisdictional Threshold**

19              Swanson argues at length that classwide claims, including her claims for

20  restitution, disgorgement, and attorneys' fees, cannot be aggregated. American General does not

21  disagree under the facts of this case. *In re Ford Motor Co./Citibank,* 264 F. 3d 952. It is the

22  individual claims of Plaintiff, Susan O. Swanson, that ultimately exceed the $75,000

23  jurisdictional threshold.

24              There is no question that individual claims for restitution, disgorgement,

25  compensatory damages, punitive damages, and attorneys' fees are properly considered to satisfy

26  the amount in controversy. *See generally* Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide:*

27  *Fed. Civ. Pro. Before Trial* §§ 2:440-448. *See also Bell v. Preferred Life,* 320 U.S. 238, 240

28  (1943) (punitive damages); *G/S v. JSS Scandinavia,* 142 F. 3d 1150, 1156 (9th Cir. 1998)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1   (attorneys' fees). Further, other federal courts in similar situations have held that claims for

2   rescission of a loan (similar to Plaintiff's seeking restitution in this case) place the entire loan

3   amount in controversy for the purpose of assessing federal diversity jurisdiction. *See, e.g., Allen*

4   *v. Kentucky Finance, et al.,* U.S.D.C. Action No. 4:02CV38LN, Memorandum Opinion and Order

5   (S.D. Miss.), at p. 6, filed January 31, 2003, attached as Exh. E to Request for Judicial Notice

6   (stating in the context of a similar claim upon a consumer loan, "where a plaintiff seeks equitable

7   relief, the amount in controversy is the 'object of the litigation'"). Restitution is an equitable

8   remedy available under the UCL. *Kraus v. Trinity Management Servs., Inc.,* 23 Cal.4th 116, 137

9   (2000). Thus, Swanson's individual claims for damages satisfy the amount in controversy.

10        Applying these principles to Swanson's action one concludes that it satisfies the

11   amount in controversy requirement. Swanson seeks an unlimited amount of damages, including

12   loss of equity and restitution in excess of $117,000 (Compl., ¶¶ 30, 81), disgorgement of at least

13   $27,000 (Mtn. For Remand, p. 9), as well as emotional distress damages, punitive damages, and

14   attorneys' fees, all in amounts to be proven at trial. The pleadings themselves demonstrate that

15   Swanson seeks compensatory damages of at least $144,000 and, as shown above, punitive

16   damages in analogous cases have in fact exceeded six figures. Accordingly, this Court has

17   diversity jurisdiction under 28 U.S.C. § 1332.

18   **C.**     **Alternatively, Removal Is Proper Because There Exists Federal Question**

19        **Jurisdiction**

20        Alternatively, this Court has jurisdiction over Swanson's claims because they

21   involve federal questions despite Swanson's designation of state law causes of action. Swanson

22   may not defeat removal by omitting to plead necessary federal questions in her complaint.

23   *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24-25

24   (1983); *Arco Environmental Remediation, L.L.C. v. Dep't. of Health and Environmental Quality*,

25   213 F.3d 1108, 1114 (9th Cir. 2000). The "artful pleading" doctrine permits this Court to look

26   "beyond the face of the complaint and find federal question jurisdiction" by "recharacterizing

27   [plaintiff's] state-law claim as a federal claim." *Precision Pay Phones v. Qwest Communs. Corp.*,

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1   210 F.Supp.2d 1106, 1112-1113 (N.D. Cal. 2002)(citing *Hunter v. United Van Lines*, 746 F.2d

2   635, 640 (9th Cir. 1985)).

3          Under this doctrine, the Court may exercise jurisdiction even if a federal question

4   does not appear on the face of the complaint. *Arco*, 213 F.3d at 1114.  Instead, the Court may

5   look to whether a substantial, disputed federal question is a necessary element of the claim or

6   whether plaintiff's purported right to relief depends on the resolution of a "substantial, disputed

7   federal question." *Id.*  In making this determination, courts do not impose rigid requirements as

8   to whether a federal claim exists.  Rather, "a court must look at a complex group of factors in any

9   particular case to decide whether a state claim actually 'arises' under federal law." *Lippitt v.*

10  *Raymond James Fin. Servs.*, 340 F.3d 1033, 1042-43 (9th Cir. 2003).

11         Federal laws such as the Truth in Lending Act ("TILA"), which regulates the

12  conduct and disclosures required of creditors engaged in credit and loan transactions (*See* 15

13  U.S.C. § 1601, *et seq.*), and the Real Estate Settlement Procedures Act ("RESPA"), which

14  regulates disclosures made in connection with loans secured by residential real property (*See* 12

15  U.S.C. § 2601, *et seq.*), form the implicit basis for Swanson's allegations concerning

16  "concealment" by AGFS in the loan origination process.  For example, TILA governs a lender's

17  marketing and disclosure obligations in various open-end and closed-end transactions.  *See e.g.,*

18  15 U.S.C. §§ 1632, 1635, 1637-1639, 1662-1664.  Similarly, RESPA governs the disclosure of

19  settlement charges related to loans secured by residential real property as well as subsequent

20  disclosures regarding servicing.  *See, e.g.,* 12 U.S.C. §§ 2604 and 2605.

21         In this case, Swanson attempts to avoid removal by substituting for TILA- and

22  RESPA-based claims a defective cause of action for violation of the Consumer Legal Remedies

23  Act (Civil Code § 1750 *et seq.*), a claimed violation of the Unfair Business Practices Act

24  (Business & Professions Code § 17200 *et seq.*) predicated on the same flawed CLRA cause of

25  action and a purported common law claim of concealment.  The problem for Swanson is that the

26  CLRA applies only to "transactions … which result in the sale of goods or services … ." [Cal.

27  Civil Code § 1770] and it does not extend to either of the matters about which they complain

28  here.  Insurance transactions are not covered by the CLRA.  *Civil Service Employees Co. v.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1    *Super. Ct.*, 22 Cal.3d 362, 376 (1978).  Neither are extensions of credit – a conclusion that is

2    readily apparent from the fact that the Legislature first added, then deleted, the terms "money"

3    and "credit" from the statute.  *Compare* Assem. Bill No. 292 at § 1761(e)[1970 Reg. Sessioin

4    (Jan. 21, 1970) *with* Assem. Bill No. 292 [1970 Session (as amended Aug. 7, 1970)].  No

5    authority supports the application of the CLRA to a loan of money.

6              Because the CLRA simply does not apply to any of Swanson's claims, it cannot be

7    used as a substitute for TILA or RESPA in a claim over alleged inadequate loan disclosures.

8    Swanson alleges a scheme of predatory lending, the gravaman of which is Defendants' alleged

9    "bait and switch" tactics and the failure to disclose the terms of the loans made to plaintiff.  *See*

10   *e.g.*, Compl., ¶¶ 19 (alleged "bait and switch" tactic); 23 (alleged failure to inform borrower that

11   insurance is optional); 25 (alleged failure to disclose relationship with Merit Life Insurance or

12   Yosemite Insurance); 28 (alleged failure to advise borrower of prepayment penalty).  As a result,

13   removal is proper because plaintiff's state law claims turn upon the propriety of Defendant's

14   alleged conduct which, in turn, requires interpretation of the provisions of TILA and RESPA.  *See*

15   *generally, Myers v. Merrill Lynch*, 1999 U.S. Dist. Lexis 22642 (N.D. Cal. 1999)(removal

16   appropriate where action brought under Cal. Bus. & Prof. Code § 17200 based upon defendant's

17   practice of arbitrary penalties against individual investors because propriety of defendant's

18   conduct turned exclusively on interpretation of federal securities laws and regulations).

19             As a practical matter, Plaintiffs move for remand but do not plead a waiver or

20   disavowal of their right to recover under any federal statute.  Other federal courts have noted this

21   factor in refusing to remand where there is a potential federal claim.  *See e.g., Taylor v. Wells*

22   *Fargo Home Mortgage, Inc.*, 2004 U.S. Dist. Lexis 6910, *5 (E.D. La. April 20, 2004)(noting, in

23   upholding removal, that plaintiffs did not expressly plead a waiver of their right to recover under

24   the federal statute).

25             As proof of the intertwined reliance upon federal law and regulations, AGFS has

26   indeed faced an analogous situation in a Mississippi action with similar allegations raised by

27   counsel who currently represent plaintiffs in the related case of *Morgan v. American International*

28   *Group, et al.*  After denying the existence of federal claims at the trial level, plaintiffs argued on

1   appeal that their claims rested upon an alleged violation of federal laws including TILA.  On

2   appeal, the plaintiffs argued:  "American General's own policies reflect the requirements of TILA

3   by mandating that insurance purchases, costs, terms and coverages are to be explained to the

4   customer who is then to voluntarily sign the Federal Disclosure Statement.  Here, the evidence is

5   undisputed that American General violated both the [federal] law and its own policies by neither

6   obtaining Plaintiff's written consent to the insurance charges nor including the insurance costs

7   among the finance charge."  *Rankin v. American General Finance, Inc.*, Supreme Court of

8   Mississippi, Case No. 2003-CA-02615, Appellant's Brief at p. 9, attached as Exh. F to Request

9   for Judicial Notice.  For these reasons, the Court should retain jurisdiction of this case in the

10  unlikely event that it were to determine that it does not have diversity jurisdiction.

### IV.

### CONCLUSION

13          This Court should retain jurisdiction because there exists complete diversity

14  between Swanson and the viable defendants and the face of Swanson's complaint reveals that the

15  amount in controversy is more than $75,000.  Swanson expressly seeks damages for the alleged

16  loss of equity in her home and restitution, in excess of $117,000, as well as "disgorgement" of

17  over $27,000 by AGFS.  In addition, Swanson seeks "upwards of $10,000" for damages in the

18  form of property taxes, and unlimited sums for emotional damages, punitive damages, and

19  attorneys' fees.

20          Alternatively, this Court has federal question subject matter jurisdiction because

21  Swanson's claims – while purportedly styled as state law causes of action – are premised on

22  necessary and substantial federal laws and regulations that are embedded in her claims.

23          For the foregoing reasons, AGFS requests the Court deny Swanson's motion for

24  remand and retain jurisdiction to determine all matters in this case.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1    DATED:  December 30, 2004.

2

3                          WINSTON & STRAWN LLP
                                Thomas J. Wiegand

4                          35 W. Wacker Drive
                                Chicago, IL  60601-9703

5                          Telephone:    312.558.5600
                                Facsimile:    312.558.5700

6                          WINSTON & STRAWN LLP

7                          Michael K. Maly
                                Gail S. Greenwood

8                          101 California Street
                                San Francisco, CA 94111-5894

9                          Telephone:    415.591.1000
                                Facsimile:    415.591.1400

10

11                        REED SMITH LLP

12

13                        By
                                Jack R. Nelson

14                          Attorneys for Defendant
                                American General Financial Services,

15                          Inc.

16  DOCSSFO-12387762.1-KBRAJE

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware.